# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# SOUTHERN DIVISION
# AT LONDON

| | |
|---|---|
| LAWRENCE GORMAN,<br><br>    Plaintiff,<br><br>V.<br><br>FIDELITY & GUARANTY LIFE INSURANCE COMPANY, INC., et al.,<br><br>    Defendants. | CIVIL ACTION NO. 6:18-319-KKC<br><br>**ORDER AND OPINION** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on Plaintiff Lawrence Gorman's motion to remand the action back to state court. [DE 6.] For reasons set forth below, the Court will **DENY** Gorman's motion. [DE 6.]

## BACKGROUND

In 1989, Plaintiff Lawrence Gorman bought a life insurance policy through the Hazard Insurance Agency ("HIA"). The policy was issued by Fidelity and Guaranty Life Insurance Company ("Fidelity"). In 2017, Gorman sought information from Fidelity regarding the status of his policy. When he did not receive a response, he hired a lawyer, who wrote to Fidelity requesting a status report. Fidelity responded that it had no records of Gorman's policy which suggested that the policy had either lapsed or been cancelled before 2004. Fidelity further stated that unless Gorman could produce evidence to the contrary, the policy would be treated as expired. Gorman then sought records from HIA but found that it was no longer in business and had filed articles of dissolution back in 2014.

Gorman filed suit in the Perry Circuit Court against Fidelity, HIA, and HIA's unknown successor. In his Complaint, Gorman seeks an accounting from all Defendants and a declaration of rights under the alleged policy. He also asserts common law bad-faith claims against Fidelity and alleges that the insurance company violated Kentucky's Unfair Claims Settlement Practices Act.

On December 14, 2018, Fidelity removed the action to this Court. Gorman asserts that this Court lacks jurisdiction because both he and Defendant HIA are citizens of the Commonwealth of Kentucky. Fidelity concedes that the lack of complete diversity would ordinarily destroy diversity. However, it maintains that removal was proper because HIA was fraudulently joined to the action.

## ANALYSIS

Federal Courts have jurisdiction over civil matters between citizens of different states in which the amount in controversy exceeds $75,000, exclusive of interests and costs. 28 U.S.C. § 1332(a). This requires complete diversity, meaning no plaintiff may share citizenship with any defendant. *Caudill v. N. Am. Media Corp.*, 200 F.3d 914, 916 (6th Cir. 2000). The burden of establishing diversity jurisdiction is on the removing party. *Coyne ex rel. Ohio v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999).

Fidelity contends that the Court's jurisdiction over the matter is proper because once the citizenships of HIA and its unknown successor are set aside, complete diversity exists among the parties. Fidelity further asserts that the amount-in-controversy requirement has been satisfied, pointing to the death benefit of the policy, its likely surrender value, and Gorman's bad-faith claims for an unspecified value. [DE 1, at 8.] It is well settled that the citizenship of a fictitious defendant, in this case HIA's unknown successor, cannot be considered for the purposes of determining diversity jurisdiction. 28 U.S.C. § 1441(b)(1); *Shaffer v. DaVita Sw. Ohio Dialysis*, No. 3:13-CV-232, 2013 WL 5366090, at *1 (S.D. Ohio

2

Sept. 24, 2013). The Court also finds by a preponderance of the evidence that the amount in controversy here exceeds $75,000, exclusive of interests and costs. 28 U.S.C. § 1446(c)(2)(B). The only remaining question then is what to do with HIA's non-diverse citizenship.

The parties here do not dispute that HIA filed articles of dissolution in 2014. It is unclear, though, what the current status of the corporation is and whether it has been fully wound up. Nevertheless, because Fidelity does not argue otherwise, the Court will assume that HIA can still be sued under the laws of Kentucky. *See* Ky. Rev. Stat. Ann. § 271B.14-050(2)(e); *Bear, Inc. v. Smith*, 303 S.W.3d 137, 145 (Ky. Ct. App. 2010) ("Generally, for the purpose of being sued, a corporation is deemed to exist until its debts are paid.").

Fidelity instead focuses on its argument that HIA's citizenship should be ignored because it was fraudulently joined to the action. Fraudulent joinder is an exception to the complete diversity requirement for federal removal jurisdiction. *Howard v. Allstate Ins. Co.*, No. CIV.A. 5:14-173-DCR, 2014 WL 5780967, at *3 (E.D. Ky. Nov. 5, 2014). To prove fraudulent joinder, Fidelity must present sufficient evidence that Gorman cannot establish a cause of action against HIA under Kentucky law. *Coyne*, 183 F.3d at 493. If Gorman has stated a colorable basis for predicting that he may recover against HIA, then this Court must remand the matter back to state court. *Id.* The test, however, is not whether Gorman added the non-diverse HIA to defeat removal but "whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." *Bobby Jones Garden Apartments, Inc. v. Suleski*, 391 F.2d 172, 176 (5th Cir. 1968)).

If the determination cannot be made from the face of the complaint, the Court may consider evidence outside the pleadings. *Walker v. Philip Morris USA, Inc.*, 443 Fed. Appx. 946, 953 (6th Cir. 2011) (internal quotation marks omitted). The Court must be careful to confine its inquiry to the threshold issue of jurisdiction and must resolve all disputed

questions of fact and legal ambiguities in favor of the nonremoving party. *In re Darvocet, Darvon & Propoxyphene Prod. Liab. Litig.*, 889 F. Supp. 2d 931, 937 (E.D. Ky. 2012).

Fidelity specifically asserts that Gorman has no possibility of recovering against HIA because there is no "arguable basis" that HIA could owe Gorman an equitable accounting under Kentucky law. This is so, Fidelity argues, because the Kentucky Supreme Court has made clear that independent insurance agents do *not* owe fiduciary duties to insureds.

In Kentucky, a plaintiff must establish either a contractual or fiduciary relationship to proceed on an accounting claim. *Gentry v. Coffey*, No. 2006-CA-002293-MR, 2007 WL 4465573, at *1 (Ky. Ct. App. Dec. 21, 2007). Gorman appears to concede that there is no contract between him and HIA that would require an accounting. Rather, Gorman bases his demand for an equitable accounting on the supposed fiduciary relationship that HIA undertook with him. Fidelity, on the other hand, maintains that HIA never owed Gorman any fiduciary obligations.

In *Associated Ins. Service, Inc. v. Garcia*, the Kentucky Supreme Court addressed the question of whether claims against an insurance agent or broker could be assigned to third parties. 307 S.W. 3d 58 (Ky. 2010). It specifically contemplated whether claims against insurance agents and brokers were sufficiently analogous to legal malpractice claims such that they could enjoy the same prohibition on assignment. *Id.* at 63. In concluding that claims against insurance agents and brokers were indeed assignable (unlike legal malpractice claims), the Kentucky Supreme Court contrasted the duties owed by attorneys with those owed by insurance agents and brokers. *Id.* Of note, it observed that "[w]hile insurance brokers and agents owe a standard duty of reasonable care to their clients, attorneys are fiduciaries owing the utmost duty of undivided loyalty." *Id.*

4

The *Garcia* decision makes clear then that an insurance agent, even when acting independently or as a broker, does not owe fiduciary duties to an insured under Kentucky law. Gorman ostensibly concedes this point. Nevertheless, he argues that the nature of his relationship with HIA was "uniquely personal" and therefore, should be treated differently. In an effort to remove his relationship with HIA from the shadow of *Garcia*, Gorman points to certain representations appearing on the current web page of the Hazard Insurance Group (not to be confused with Defendant Hazard Insurance Agency ("HIA")). This web page highlights the benefits of purchasing an insurance policy from an "independent insurance agent." It also states that "serving policyholders is an independent agent's most important concern." [DE 11, at 8.]

Fidelity complains that the content of the Hazard Insurance Group's web page should not be imputed to HIA for the purpose of this Court's analysis because the two are completely separate corporate entities. Moreover, Fidelity asserts that even if the representations currently appearing on Hazard Insurance Group's web page could be imputed to HIA, there is no way that Gorman viewed them in 1989 when purchasing his Fidelity policy. After all, the World Wide Web was not made available to the public until 1991.

Next, Gorman directs the Court's attention to an "additional" service that he claims HIA provided to him. On the original policy application, the mailing address for the potential insured indicates "c/o Hazard Insurance Agency, Inc., P.O. Box 59, Hazard, KY 41701." This care of designation, according to Gorman, shows that HIA assumed the responsibility of receiving information concerning the policy on his behalf. [DE 6, at 12.]

Gorman's reasons for why a "uniquely personal" relationship was established between him and HIA are unavailing. Simply put, the web page representations do not create the type of rapport that Gorman insists upon. And as to the care of designation listed on the policy application, there is nothing unique about an insurance agent or broker receiving

5

correspondence on behalf of an insured. Accordingly, the Court determines that Gorman has failed to establish the existence of a fiduciary relationship between him and HIA.

C.

In the alternative, Gorman argues that even if the Court finds that HIA does not owe him any fiduciary duties, he is nevertheless entitled to an accounting under an apparent agency theory. In support of this claim, Gorman points to a document that he labels as an annual accounting of his Fidelity policy for the year 1995. The 1995 document lists HIA as the "agent" associated with the policy. Under the assumption that Fidelity created the document, Gorman claims that by listing it as the agent associated with the policy, Fidelity created in HIA the apparent authority "to be contacted with specific questions related to an accounting for the [p]olicy." [DE 11, at 10.] And when paired with HIA's own representations about the ability to provide pertinent policy information to its clients, Gorman asserts that HIA has the apparent ability to render an accounting on Fidelity's behalf. [DE 11, at 10.]

Gorman also suggests that since Fidelity has refused to concede the authenticity of the 1995 document, there is, at a minimum, a factual question concerning authorship. Gorman submits that the only other party who could have drafted the document was HIA. And, if HIA did in fact create the document, Gorman states that it would demonstrate that Fidelity has failed to meet its burden that there is no colorable claim for accounting against HIA.

Though these contentions are clever, the Court is unwilling to accept them. The link between Gorman's agency theories and HIA's duty to provide an equitable accounting are tenuous at best. The Court therefore determines that they do not establish a reasonable basis for which Gorman might recover under Kentucky law.

**D.**

Lastly, Gorman raises the common defense rule which states that if the removing party's arguments for fraudulent joinder, if accepted, would defeat the claims of all defendants, then the requisite showing for fraudulent joinder has not been made. *See Smith v. SmithKline Beecham Corp.*, No. CIV. 11-56-ART, 2011 WL 2731262, at *4 (E.D. Ky. July 13, 2011). Gorman submits that Fidelity's arguments are not specifically geared to the fraudulent joinder issue. Instead, they speak to the merits of this lawsuit and if accepted, would dispose of additional claims against the Defendants.

To the contrary, Fidelity argues that its positions concerning the equitable accounting claim against HIA are "completely unique" to its status as an insurance agent. Fidelity further notes that in the event the equitable accounting claims against it and HIA were dismissed, three other claims against Fidelity would still remain. Accordingly, the Court's acceptance of the fraudulent joinder arguments would not dispose of *all* the claims against *all* parties.

The Court finds that Fidelity's fraudulent joinder arguments speak directly to that issue and are tailored to HIA. Indeed, Fidelity's main contention here is that an equitable accounting claim could not procced against HIA for want of a fiduciary duty. This argument is entirely specific to HIA. The Court also observes that even if the equitable accounting claims against both HIA and Fidelity fell, there would still be several remaining claims against Fidelity. This fact alone extinguishes Gorman's common defense claim under the interpretation followed by multiple courts within this District. *See Fee v. Chesapeake Appalachia, L.L.C.*, No. 7:13-CV-96-KKC, 2014 WL 2769119, at *4 (E.D. Ky. June 18, 2014); *In re Darvocet*, 889 F. Supp. 2d at 936–37; *SmithKline Beecham Corp.*, 2011 WL 2731262, at *6. Though these decisions are merely persuasive, the Court refuses to change direction and adopt the interpretation of the common defense rule offered by Gorman, which would only

require the nonremoving party to show that *some*, instead of all, of the claims against the diverse defendant would fail if the removing party's fraudulent joinder arguments were accepted. *See First United, Inc. v. General Motors*, LLC, 2011 WL 1103730, *4–5 (S.D. Cal. 2011); *McNary v. Cottrell, Inc.*, 2009 WL 5066650, *4 (S.D. Ill. 2009). In the Court's eyes, such a course would be imprudent. In sum, the Court rejects Gorman's contention that the common defense rule bars a finding of fraudulent joinder in this instance.

## CONCLUSION

For these reasons, the Court finds that HIA was fraudulently joined to the action and **denies** Gorman's motion to remand. [DE 6.] Further, because HIA was fraudulently joined to the action, it will be **dismissed** as a party thereto.

Dated May 23, 2019.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY